## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF NEW YORK

LAYTONIA FLAGG,

                                                         Plaintiff,

          vs.

NYS DIVISION OF PAROLE;
MARK SABEN, Parole Officer;                              5:19-CV-886
SYRACUSE POLICE DEPT.; DETECTIVE                         (TJM/ATB)
WILLIAM SUMMERS, ID#409; D.P. PROUD,
ID# 0140; RICHARD CURRAN, ID# 0066;
WILLIAM J. FITZPATRICK, Onondaga County,
District Attorney; and SEAN CHASE, D.A.,

                                                         Defendants.

LAYTONIA FLAGG, Plaintiff pro se

ANDREW T. BAXTER, United States Magistrate Judge

### ORDER and REPORT-RECOMMENDATION

The Clerk has sent me an amended[1] civil rights complaint filed by pro se plaintiff

Laytonia Flagg. (Dkt. No. 3).  Plaintiff Flagg has also filed an application to proceed in

forma pauperis ("IFP"). (Dkt. No. 4).

I.      **IFP Application**

A review of plaintiff's IFP application shows that she declares she is unable to

pay the filing fee. (Dkt. No. 4).  The court finds that plaintiff meets the financial criteria

for IFP status.

---

[1] When plaintiff filed her original complaint, the case was administratively closed due to plaintiff's failure to comply with the filing fee requirement. (Dkt. No. 2).  Prior to re-filing her motion to proceed IFP, (Dkt. No. 4), plaintiff also filed an amended complaint, which the court will review as the operative pleading. The case was re-opened on August 1, 2019. (Dkt. No. 6).

In addition to determining whether plaintiff meets the financial criteria to proceed IFP, the court must also consider the sufficiency of the allegations set forth in the complaint in light of 28 U.S.C. § 1915, which provides that the court shall dismiss the case at any time if the court determines that the action is (i) frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B)(i) -(iii).

In determining whether an action is frivolous, the court must consider whether the complaint lacks an arguable basis in law or in fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Dismissal of frivolous actions is appropriate to prevent abuses of court process as well as to discourage the waste of judicial resources. *Neitzke*, 490 U.S. at 327; *Harkins v. Eldridge*, 505 F.2d 802, 804 (8th Cir. 1974). Although the court has a duty to show liberality toward *pro se* litigants, and must use extreme caution in ordering *sua sponte* dismissal of a *pro se* complaint before the adverse party has been served and has had an opportunity to respond, the court still has a responsibility to determine that a claim is not frivolous before permitting a plaintiff to proceed. *Fitzgerald v. First East Seventh St. Tenants Corp.*, 221 F.3d 362, 363 (2d Cir. 2000) (finding that a district court may dismiss a frivolous complaint sua sponte even when plaintiff has paid the filing fee).

To survive dismissal for failure to state a claim, the complaint must contain sufficient factual matter, accepted as true, to state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause

2

of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Bell Atl. Corp.*, 550 U.S. at 555). The court will now turn to a consideration of the plaintiff's complaint under the above standards.

## II.   Complaint

Plaintiff states that she is the mother of Mario Leslie, who at the time of the incidents described in the complaint, was on parole. (Amended Complaint ("AC") at 1).[2] On August 8, 2016, defendant New York State Parole Officer ("PO") Mark Saben went to Mr. Leslie's home at 514 Marcellus Street in Syracuse, New York, to conduct a "standard home visit."[3] (*Id.*) Mr. Leslie lived at the Marcellus Street address with his girlfriend, Tamacha Rodriguez. (*Id.*) Plaintiff claims that Ms. Rodriguez answered the door for PO Saben, and that Mr. Leslie was "summoned" from his bedroom to speak with defendant Saben. (*Id.*) After some discussion, PO Saben was walking toward the front door, when he spotted some glassine packets "known to contain heroin." (*Id.*) Upon discovering the glassine packets, defendant Saben informed Mr. Leslie that he was going to conduct a search of the entire residence according to the conditions of his parole release. (*Id.*)

---

[2] Plaintiff numbered the pages of the "Fact" section of the amended complaint at the bottom of the page. The court will cite to the page numbers contained on the actual document. Plaintiff has attached a series of documents as exhibits to the amended complaint which she did not number. The court will cite to the plaintiff's exhibits ("AC Ex.") with the page number as assigned by the court's electronic filing system ("CM/ECF").

[3] Plaintiff was not present for any of the incidents that she describes in her complaint until she arrived at her house during the subsequent search of her property. Plaintiff appears to be taking her recitation of the background facts from the police reports and other documents that she has attached to her amended complaint. (AC Ex. CM/ECF pp. 16-32). The court is stating the facts as plaintiff has described them in the amended complaint.

Plaintiff states that, as a result of the subsequent search, the officer discovered a safe, containing a loaded firearm and $31,925 in United States currency. Defendant Saben also discovered a key chain on which were a set of keys that were identified as keys to plaintiff's residence. Plaintiff claims that "[a]t this point Sr. P.O. Rigby called the Syracuse Police Department."[4] (AC at 2). Plaintiff claims that defendant Rigby spoke to Sergeant A. Llukaci, a detective with the Syracuse Police Department, and Sergeant Llukaci told defendants Detectives William Summers and D.P. Proud to go to the Marcellus Street address. Plaintiff states that upon his arrival, defendant Proud stated that he spoke to Ms. Rodriguez, who told defendant Proud that Mr. Leslie kept his money at his mother's apartment "although there is no affidavit on file to attest to that assertion by the [sic] Det. Proud."

Defendant Summers obtained a warrant for the search of plaintiff's home at 112 Fordham Rd. in Syracuse, New York. (AC Ex. CM/ECF p.16-17). Plaintiff claims that she was not home when the "Syracuse Police" and defendant Saben arrived at her home to execute the search warrant.[5] (AC at 2). The officers entered with the key that was found at Mr. Leslie's Marcellus Street home.[6] (*Id.*) Plaintiff arrived shortly thereafter, but was denied entrance to her home while the search was being executed. (*Id.*)

---

[4] This is the first time that another parole officer was mentioned in plaintiff's statement of facts. The court will assume that defendant Rigby was at the residence from the beginning, but it is not completely clear from the papers.

[5] Plaintiff does not allege that PO Rigby participated in the search of her apartment.

[6] Plaintiff states that the officers were in possession of the door key "prior to their actual possession of the warrant for 112 Fordham Rd." (AC at 2).

Plaintiff states that the officers searched plaintiff's apartment and recovered $40,000.00 in cash from a safe that was located in plaintiff's bedroom closet.  Plaintiff alleges that the officers confiscated the money.

Plaintiff claims that the officers did not have probable cause to obtain the warrant to search her home because there was no proof that Ms. Rodriguez ever made the statement that Mr. Leslie kept his money at his mother's house, and thus, the warrant was obtained improperly.  Plaintiff claims that her Fourth Amendment rights were violated as the result of the search of her apartment.  Plaintiff then claims that after the seizure of her $40,000.00, she informed defendant Assistant District Attorney ("ADA") Sean Chase that the money did not belong to Mr. Leslie, and that the money was plaintiff's savings which she would be using to purchase a new home. (AC at 5). Plaintiff claims that ADA Chase told her that his "office would return the illegally seized money." (*Id.*)

Plaintiff states that, shortly after the incident, she also filed a "complaint" form to complain about the police "conduct in Plaintiff's home," and to request the "immediate return of the Plaintiff's money." (*Id.*)  Plaintiff states that the District Attorney's Office responded to the "property release" request only after plaintiff obtained the intervention of "a 3rd party (Feldman, Kramer & Monaco, P.C.)" (*Id.*)  Plaintiff claims that the property release form showed that the plaintiff's "legally possessed currency was improperly forfeited along with the monies ($31,925.00) seized at 514 Marcellus St." (AC at 6).

Plaintiff claims that ADA Chase told plaintiff on three separate occasions that

her money was going to be returned, but that this was a "stalling tactic" by the District

Attorney's Office.  ADA Chase told plaintiff that he was waiting to hear from Mr.

Leslie's attorney "in hopes of persuading [Mr. Leslie] to sign a forfeiture document that

later became clear to the Plaintiff that the forfeiture included what was seized at both

residences . . . ." (AC at 6).  The forfeiture document states that Mr. Leslie stipulated to

the forfeiture of $67,269.00, and that he was not aware of any other person who

claimed to be the owner of the property.[7] (AC at 6).  Plaintiff alleges that the

$40,000.00 was not Mr. Leslie's to forfeit.  Plaintiff also alleges that the amount on the

stipulation of forfeiture that Mr. Leslie signed does not account for the entire amount

seized, even though plaintiff was not given any of her money back.  Plaintiff claims that

the actual amount seized, including her $40,000.00 was $71,925.00, and that there is

$4,656.00 missing from the total. (*Id.*)  Plaintiff also claims that the individuals who

seized her money did not have the "warrant in hand" and never gave her a receipt for

the money that they took. (AC at 7).  Plaintiff states that the money taken from her

home was not specifically mentioned in any of the paperwork that was subsequently

provided to plaintiff as the result of her inquiries. (AC at 8).

Plaintiff states that she spoke to then-Chief of the Syracuse Police, Frank Fowler,

who told plaintiff that her concerns would be "thoroughly investigated," but then did

---

[7] Plaintiff has attached a copy of Mr. Leslie's "Waiver and Stipulation." (AC Ex. CM/ECF p.25-26).  Plaintiff claims that this document was obtained after she asked for the return of the money several times from the District Attorney's Office, the Citizen Review Board, and the Syracuse Police Department. (AC at 7).  When she failed to get a "truthful" response, she contacted Feldman, Kramer & Monaco, P.C. (*Id.*)  The document was sent to the attorneys' office after the firm wrote a letter of inquiry. (*Id.*)

not provide plaintiff a report of the investigation and told plaintiff to file a Freedom of Information request if she wished to see the report. (*Id.*)  Plaintiff has attached correspondence that she received from former Chief Fowler, stating that the report had been forwarded to him and that plaintiff could "be assured that [Fowler would] take the proper administrative action in this case." (AC Ex. CM/ECF p.19).

Although the AC contains a "Second Cause of Action," plaintiff essentially repeats that her Fourth Amendment rights were violated by the defendants' actions in conjunction with the search of her home and the seizure of her money. (AC at 8-9). Plaintiff states that she has not been afforded any documentation that would establish probable cause to search her home. (AC at 9).  Plaintiff states that there is no connection between her and Mr. Leslie's "illegal activities," and there was nothing "illegal" found in plaintiff's apartment. (*Id.*)  In applying a very liberal reading of the AC,[8] the court could interpret plaintiff's second cause of action as a Fourteenth Amendment Due Process claim, asserting that the defendants deprived her of her money without due process of law when they did not return the money after she made various inquiries and did not allow her to challenge the ownership of the money after her son signed the waiver and stipulation.

As stated above, the plaintiff has attached various documents as exhibits to the AC, including (1) the search warrant issued by City Court Judge Kate Rosenthal for

---

[8] Plaintiff is pro se, and the court must interpret plaintiff's complaint liberally. *Sealed Plaintiff v. Sealed Defendants*, 537 F.3d 185, 191 (2d Cir. 2008).  The court considers all possible grounds for relief that plaintiff could be raising. *See Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994) (pro se papers are interpreted liberally to raise the strongest arguments suggested therein).

plaintiff's apartment at 112 Fordham Rd. (AC Ex. CM/ECF pp.16-17); (2) Plaintiff's

Civilian Complaint Report (AC Ex. CM/ECF p.18); a letter to plaintiff from former

Chief Fowler (AC Ex. CM/ECF p.19); a letter to plaintiff from David L. Chaplin, II,

Esq. on behalf of the Citizen Review Board dated December 2, 2016 (AC Ex. CM/ECF

p. 20); a letter to plaintiff from Kimberly M. Osbeck, a paralegal for the Onondaga

County District Attorney's Office, dated March 6, 2018 (AC Ex. CM/ECF p. 21); a

letter to plaintiff from the Public Integrity Bureau of the New York State Attorney

General's Office (AC Ex. CM/ECF p. 22); an "Application for Release of Property,"

signed by plaintiff on November 2, 2017, together with the unsigned refusal to release

the property because the "money [was] forfeited during [a] criminal prosecution." (AC

Ex. CM/ECF pp.23-24); the "Waiver and Stipulation," signed by Mr. Leslie on

February 28, 2017, relinquishing any rights to the seized money (AC Ex. CM/ECF

pp.25-26); "CNYLEADS Narrative Supplement[s]" numbers 1-3, including an "offense

page" and a "property supplement," detailing all the property taken from the Marcellus

St. address. (AC Ex. CM/ECF pp.27-32).

Plaintiff seeks the return of the $40,000.00 that she claims was taken from her in

August of 2016, compensatory damages for the "Syracuse Police Department trashing

Plaintiff's two bedrooms at 112 Fordham Rd.," damages for "five hours" worth of lost

income[9] on the day of the search, unspecified lost income for the day that she had to

---

[9] Plaintiff states that she works from home, and could not work for the time that the officers were searching her apartment. (AC at 10).

appear in court,[10] and "punitive" damages for emotional pain and suffering, including

the damages for the delay in purchasing her dream home. (*Id.*)

## III.   Eleventh Amendment/New York State Division of Parole

### A.   Legal Standards

The Eleventh Amendment provides that states have immunity against suits in

federal court. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984).

An action against state officers in their official capacities, or an action against an

agency of the state, is tantamount to an action against the state.  *Yorktown Medical*

*Laboratory v. Perales*, 948 F.2d 84, 87 (2d Cir. 1991) (official capacity actions);

*Santiago v. New York State Dep't of Correctional Services*, 945 F.2d 25, 28 n.1 (2d Cir.

1991) (agencies of the state).

### B.   Application

In this case, in addition to the individual parole officers who were allegedly

responsible for obtaining the warrant to search her apartment, plaintiff has named the

"N.Y.S. Division of Parole." (AC at 1).  The Eleventh Amendment prevents plaintiff

from suing the N.Y.S. Division of Parole.  Thus, to the extent that plaintiff seeks to sue

the agency separately from the individual officers, the AC may be dismissed with

prejudice, but as further discussed below, plaintiff may sue Mark Saben, one of the

---

[10] Apparently, on the day that the officers searched plaintiff's apartment, they found a "weed roach" and gave plaintiff an appearance ticket, which was later dismissed after plaintiff appeared in court. (AC at 10).  Plaintiff seeks lost income for the time that it took to appear in court. (*Id.*)

individuals who allegedly participated in obtaining the warrant for her home.[11]

## IV.   Syracuse Police Department/Municipal Liability

### A.   Legal Standards

Under New York law, departments, like the Syracuse Police Department that are merely administrative arms of a municipality, do not have a legal identity separate from the municipality, and may not sue or be sued. *Hayes v. County of Sullivan*, Nos. 07-CV-667; 09-CV-2071, 2012 WL 1129373, at *24 (S.D.N.Y. March 30, 2012) (citing inter alia *Hall v. City of White Plains*, 185 F. Supp. 2d 293, 303 (S.D.N.Y. 2002)).

### B.   Application

To the extent that plaintiff is suing the Syracuse Police Department as an entity separate from the individual police officers who were allegedly involved in obtaining the warrant for her apartment, plaintiff may not do so.  Unlike the State of New York itself, against which a suit for damages would be barred by the Eleventh Amendment, the City of Syracuse could be named instead of the Syracuse Police Department. However, the municipality itself may only be named as a defendant in certain circumstances.  In *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978), the Supreme Court outlined the limited circumstances under which a municipality may be liable

---

[11] It is unclear whether plaintiff meant to name PO Rigby as a defendant herein.  He is mentioned briefly in the body of the complaint and was apparently present during the Marcellus St. search, but is not listed in the caption of the complaint, and plaintiff submitted no proposed summons for PO Rigby.  In addition, it does not appear from the facts as stated by plaintiff that PO Rigby was involved in obtaining the search warrant for plaintiff's apartment, nor is it even apparent that he was present during the search of plaintiff's apartment.  Thus, plaintiff does not state any claims against PO Rigby, and to the extent that she meant to name him as a defendant, the AC should be dismissed as against him.

under Section 1983. Only when the municipality, through the execution of its policies, actually deprives an individual of his constitutional rights, is it liable for the injury. *Id.* at 694. To establish municipal liability, the policy must actually cause the violation of constitutional rights; it must be the moving force behind the violation. *Id.*; *Dominguez v. Beame*, 603 F.2d 337, 341 (2d Cir. 1979).

As it is written, the AC makes no claims that would allow the plaintiff to name the City of Syracuse as a defendant in this action. Plaintiff essentially complains of a single incident, during which the officers did not act properly in obtaining a warrant for her home and did not act properly in executing the warrant in her case. There is no indication that plaintiff can assert a policy or custom which would support municipal liability based on these facts. While plaintiff may not sue the Syracuse Police Department in any event, and while the court will not sua sponte replace the Syracuse Police Department with the City of Syracuse, the court does not rule out that, upon proper pleading, plaintiff could amend her AC to assert such a claim against the City of Syracuse.

However, plaintiff is warned that any such facts must plausibly suggest her claim, and that simply making a conclusory allegation of a "policy or custom" is insufficient to assert municipal liability. *Sulaymu Bey v. City of New York*, No. 17-CV-3563. 2019 WL 1434597, at *10 (E.D.N.Y. Mar. 29, 2019); *Nielsen v. City of Rochester*, 58 F. Supp. 3d 268, 277 (W.D.N.Y. 2014) (conclusory allegations which merely recite the elements for stating a *Monell* claim are insufficient to state a claim for municipal liability) (citing inter alia *Genovese v. Town of Southhampton*, 92 F. Supp.

11

2d 8, 25 (E.D.N.Y. 2013)).  A single incident, particularly if it involved individuals below the policy-making, level is insufficient to state a *Monell* claim. *DeCarlo v. Fry*, 141 F.3d 56, 61 (2d Cir. 1998).  As discussed below, plaintiff may proceed against the individual officers who she claims violated her constitutional rights: Detective Summers, D.P. Proud; and Richard Curran.

## V.   Prosecutorial Immunity/Personal Involvement

### A.   Legal Standards

#### 1.   Prosecutorial Immunity

Prosecutors enjoy absolute immunity from suit under section 1983 in matters associated with their prosecutorial functions, regardless of motivation. *Dory v. Ryan*, 25 F.3d 81, 83 (2d Cir. 1994) (prosecutorial immunity covers virtually all acts associated with the prosecutor's function, including conspiracies to present false evidence); *Bernard v. County of Suffolk*, 356 F.3d 495 (2d Cir. 2004) (absolute immunity shields prosecutors from suit pursuant to section 1983 for their alleged malicious or selective prosecution as well as for any misconduct in the presentation of evidence to the grand jury).

Absolute immunity is defeated only when the prosecutor is engaging in investigative functions. *Bernard v. County of Suffolk*, 356 F.3d at 502-503 (citation omitted).  The initiation and pursuit of prosecution, regardless of any alleged illegality, is protected by absolute prosecutorial immunity. *Peay v. Ajello*, 470 F.3d 65, 67-68 (2d Cir. 2006).  It has also been held that a prosecutor is entitled to absolute immunity for his or her decision not to prosecute, regardless of the motivation for that decision.

*Scloss v. Bouse*, 876 F.2d 287, 292 (2d Cir. 1989).

### 2.    Personal Involvement

Personal involvement is a prerequisite to the assessment of damages in a section

1983 case, and respondeat superior is an inappropriate theory of liability. *Richardson v.*

*Goord*, 347 F.3d 431, 435 (2d Cir. 2003).  In *Williams v. Smith*, 781 F.2d 319, 323-24

(2d Cir. 1986), the Second Circuit detailed the various ways in which a defendant can

be personally involved in a constitutional deprivation, and thus be subject to individual

liability.

A supervisory official is personally involved if that official directly participated

in the infraction.  *Id.*  The defendant may have been personally involved if, after

learning of a violation through a report or appeal, he or she failed to remedy the wrong.

*Id.*  Personal involvement may also exist if the official created a policy or custom under

which unconstitutional practices occurred or allowed such a policy or custom to

continue.  *Id.*  Finally, a supervisory official may be personally involved if he or she

were grossly negligent in managing subordinates who caused the unlawful condition or

event.  *Id.  See also Iqbal v. Hasty*, 490 F.3d 143, 152–53 (2d Cir. 2007) (citing *Colon*

*v. Coughlin*, 58 F.3d 865, 873) (2d Cir. 1995)), *rev'd on other grounds*, *Ashcroft v.*

*Iqbal*, 556 U.S. 662, 678 (2009).

Some courts have discussed whether all of the *Colon* factors are still viable after

*Ashcroft*.  *See Conklin v. County of Suffolk*, 859 F. Supp. 2d 415, 439 (E.D.N.Y. 2012)

(discussing cases).  However, the court in *Conklin* ultimately determined that it was

unclear whether *Colon* had been overruled or limited, and continued to apply the

factors outlined in *Colon*. *Id.*  In making this determination, the court in *Conklin* stated

that "it remains the case that 'there is no controversy that allegations that do not satisfy

any of the *Colon* prongs are insufficient to state a claim against a defendant-

supervisor.'" *Id*. (quoting *Aguilar v. Immigration Customs Enforcement Div. of the U.S.

Dep't of Homeland Sec.*, 811 F. Supp. 2d 803, 815 (S.D.N.Y. 2011)). *See also Jones v.

Smith*, No. 09-CV-1058, 2015 WL 5750136, at *8 n.6 (N.D.N.Y. Sept. 30, 2015)

(discussing the use of the *Colon* factors absent definitive guidance from the Second

Circuit).

### B.    Application

Plaintiff has named the Onondaga County District Attorney, William J.

Fitzpatrick, together with one of his Assistant District Attorneys, Sean Chase. (AC ¶

3(c)).  Plaintiff claims that she spoke to ADA Chase "right after the seizure," she

explained to him that the money did not belong to her son, the money was hers, and she

"produced tax returns" for the last five consecutive years in an effort to show that she

"legally possessed the money." (AC at 5).  She claims that "[k]nowing this," ADA

Chase told plaintiff that his office would return the illegally seized money. (*Id.*)

Plaintiff claims that notwithstanding ADA Chase's statement, he did not return the

money, and allegedly "stalled" plaintiff until her son signed the waiver of forfeiture

document, which included the total amout of money that was seized from both

residences. (AC at 6).  The initiation of civil asset forfeiture proceedings is a

prosecutorial function that has been afforded absolute immunity. *See Byrne v. City of

New York*, 736 Fed. App'x 263, 266 (2d Cir. 2018) (Second Circuit precedent affords

absolute immunity to government attorneys who initiate civil suits) (quoting *Spear v. Town of W. Hartford*, 954 F.2d 63, 66 (2d Cir. 1992); *Mangiafico v. Blumenthal*, 471 F.3d 391, 395 (2d Cir. 2006)).

ADA Chase was allegedly handling the forfeiture proceeding, and even though he did not have to initiate court proceedings because Mr. Leslie signed the stipulation and waiver, the document stated that "I have concluded that the District Attorney would likely establish that the above-mentioned property is subject to forfeiture pursuant to Article 13-A [of the NY Civil Practice Law and Rules] and the District Attorney would likely prevail in such a forfeiture action."[12] (AC Ex. CM/ECF p.25).  This document took the place of an in-court forfeiture proceeding, which would have been held pursuant to N.Y. Civ. Prac. L. & R. § 1311 (Forfeiture Actions).  Thus, ADA Chase is entitled to absolute immunity with respect to his conduct relative to the forfeiture of the money seized, even if plaintiff claimed that some of the money belonged to her.[13]  This is true whether ADA Chase's conduct was proper or improper, and whether or not he was mistaken in obtaining Mr. Leslie's waiver and stipulation of forfeiture.  Thus, to the extent that plaintiff raises due process violations with respect to her interest in the funds, they must be dismissed as against ADA Chase.

---

[12] Article 13-a is entitled "Proceeds of a Crime -Forfeiture." N.Y. Civ. Prac. L. & R. Art. 13-a

[13] Although not relevant to the court's decision because it is based on absolute immunity of the prosecutor, regardless of whether Mr. Leslie's assertions in the document were correct, the court notes that plaintiff's statement herein is contrary to her son's **sworn** assertion in the document.  Plaintiff states that ADA Chase told plaintiff that they were waiting to hear from Mr. Leslie's attorney regarding whether he was going to sign the forfeiture document. (AC at 6).  Plaintiff claims that her son signed the document "under duress."  Plaintiff cannot assert any claims regarding her son, and in any event, her son was, by her own statement, represented by counsel during the matter.

Plaintiff has not asserted any facts against defendant Fitzpatrick.[14]  He does not

appear to have been involved in any way in obtaining the search warrant for plaintiff's

apartment, in executing the search warrant for plaintiff's apartment, or in the forfeiture

proceedings with respect to the money seized.  Thus, any claims against him

individually would fail for lack of personal involvement.  If he had been personally

involved in the forfeiture, he, like ADA Chase, would be entitled to absolute

prosecutorial immunity.[15]  Thus, plaintiff's amended complaint may be dismissed with

prejudice as against defendants ADA Chase and DA Fitzpatrick.

## VI.   Search and Seizure

### A.   Legal Standards

"It is well-settled that in cases raising claims under the Fourth Amendment of

unauthorized execution of a search warrant '[t]he validity of the warrant must be

assessed on the basis of the information that the officers disclosed, or had a duty to

---

[14] Plaintiff requests only damages, including a return of the $40,000.00 as relief in this action. She does not seem to be asking for any form of injunctive relief.  Even though plaintiff asks for a "return" of money, the Eleventh Amendment does not "recognize a distinction 'between monetary damages and money in which plaintiff has a property interest.'" *Local 851 of Internat'l Broth. of Teamsters v. Thyssen Haniel Logistics, Inc.*, 90 F. Supp. 2d 237, 249-50 (E.D.N.Y. 2000) (quoting *Yorktown Medical Lab., Inc. v. Perales*, 949 F.2d 84, 87-88 (2d Cir. 1991)).  The District Attorney could have been the proper party in a declaratory judgment under New York State law under N.Y. Civ. Prac. L & R. 1327 (Proceedings to Determine Adverse Claims), which plaintiff could have filed within six months of the stipulation, signed by Mr. Leslie.

[15] To the extent that the complaint could be interpreted as suing either ADA Chase or DA Fitzpatrick in their "official capacities," the Eleventh Amendment would bar any such suit. *See Blessinger v. City of New York*, No. 17-CV-108, 2017 WL 3841873, at *1-2 (S.D.N.Y. Sept. 1, 2017) (prosecutors are entitled to Eleventh Amendment immunity when they are acting in their prosecutorial capacity because they are acting as state officials rather than city or county employees) (citing *Peterson v. Tomaselli*, 469 F. Supp. 2d 146, 157 (S.D.N.Y. 2007) and *Baez v. Hennessy*, 853 F.2d 73, 77 (2d Cir. 1988) (when prosecuting a criminal matter, a district attorney in New York State represents the State not the County)).

disclose, to the issuing Magistrate.'" *Arroyo v. City of Buffalo*, No. 15-CV-753, 2018 WL 4376798, at \*3 (W.D.N.Y. Sept. 13, 2018) (quoting *Velardi v. Walsh*, 40 F.3d 569, 575 n. 2 (2d Cir. 1994) (internal quotation marks omitted)).  A warrant is not invalid for section 1983 purposes if it is "'based on seemingly reliable information which is later found to be erroneous.'" *Id.* (quoting *Lewis v. City of Mt. Vernon, N.Y.*, 984 F. Supp. 748, 756 (S.D.N.Y. 1997)).

### B.    Application

Although the court has concerns about the merits of this action, at this stage of the proceedings, the court finds that any Fourth Amendment claims that plaintiff may have against defendants Saben, Summers, Proud, and Curran may survive initial review.[16]  Plaintiff seems to claim that the warrant for her home was based on false information given the court, which plaintiff claims was the only basis for the warrant. While it may be that a close review of the documents provided with the amended complaint, together with any other evidence or argument by defendants in a properly supported dispositive motion, may show otherwise, the court is not currently in a position to make factual or other determinations regarding the validity of the warrant or any other claims that plaintiff may have regarding the search of her home.

---

[16] Although plaintiff has included a proposed summons for Sgt. Llukaci, this individual is not listed in the caption of the AC, nor is he included in the section of the form-AC which lists the individual Syracuse Police Officers. (AC ¶ 3(c)) for whom she has included identification numbers.  In any event, plaintiff's only allegations against Sgt. Llukaci are that he sent defendants Proud and Summers to Mr. Leslie's Marcellus St. home after the parole officers found contraband therein. Plaintiff does not allege that he was personally involved in any of the conduct that she claims violated her constitutional rights.  He was not at either residence and was not involved in obtaining the allegedly invalid warrant.  Thus, to the extent that plaintiff is trying to sue Sgt. Llukaci, the AC may be dismissed as against this defendant.

The court also notes that because of the waiver and stipulation, signed by Mr. Leslie, there was no formal forfeiture proceeding in New York State Court as provided in N.Y. Civ. Prac. L. & R. § 1311.  Thus, it is unclear how the plaintiff could have challenged the forfeiture.[17]  The court also makes no findings regarding the validity of any defenses that the defendants may assert regarding the incident in question.

**WHEREFORE**, based on the findings above, it is

**ORDERED**, that plaintiff's motion to proceed IFP (Dkt. No. 4) is **GRANTED**, and it is

**RECOMMENDED**, that the amended complaint (Dkt. No. 3) be **DISMISSED IN ITS ENTIRETY** as against defendants **N.Y.S. DIVISION OF PAROLE; SYRACUSE POLICE DEPARTMENT; WILLIAM J. FITZPATRICK; AND SEAN CHASE**, and it is

**RECOMMENDED**, that to the extent that the AC may be read as naming **SGT. LLUKACI or PO RIGBY**, the AC may be dismissed **WITHOUT PREJUDICE** for failure to state a claim, and it is

**RECOMMENDED**, that if the District Court adopts this Recommendation, the case be returned to me for further proceedings, including an order serving the remaining defendants: **SABEN, SUMMERS, PROUD, and CURRAN**.

---

[17] The court does note that section 1311(7) provides that an innocent owner may challenge the forfeiture and regain the forfeited property if the owner never received notice of the forfeiture.  In addition, section 1327 provides for an "interested person" to bring a proceeding to determine adverse claims, even after the forfeiture action was settled by stipulation. *See Tupi Cambios, S.A. v. Morganthau*, 48 A.D.2d 278 (1st Dep't 2008).  In *Tupi Cambios*, the District Attorney was the proper "defendant" in New York State Court.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.**  *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec. of Health & Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated: August 15, 2019

Hon. Andrew T. Baxter
U.S. Magistrate Judge