**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**LAYTONIA FLAGG,**

                **Plaintiff,**

    **v.**                              **5:19-CV-886**

**MARK SABEN, *et al.*,**

                **Defendants.**
_____

**THOMAS J. McAVOY,**
**Senior United States District Judge**


**DECISION & ORDER**

**I.    INTRODUCTION**

Plaintiff Laytonia Flagg commenced this civil rights action pro se pursuant to 42 U.S.C. § 1983 asserting claims surrounding the search of her residence, the seizure of $40,000 from a safe in her bedroom, and the subsequent forfeiture of this money in her son's state court criminal case. *See generally* Am. Compl. Dkt. 3.  Plaintiff asserts two causes of action in the Amended Complaint.  Both allege violations of the Fourth Amendment.  On initial review in connection with Plaintiff's in forma pauperis application, Magistrate Judge Baxter interpreted the second cause of action as alleging a deprivation of due process in violation of the Fourteenth Amendment, an interpretation the Court adopted. *See* Dkt. 7, 8.

Presently before the Court are motions by Richard Curran, a City of Syracuse Police Officer, and Mark Saben, a New York State Parole Officer, to dismiss claims against them.

1

*See* dkts. 22, 31.  Officer Curran brings his motion pursuant to Fed. R. Civ. P. 12(c), and

Parole Officer Saben brings his motion pursuant to Fed. R. Civ. P. 12(b)(1) and (6).

## II.    STANDARDS OF REVIEW

### a.    Fed. R. Civ. P. 12(b)(1)

A motion brought pursuant to Fed. R. Civ. P. 12(b)(1) challenges the subject matter

of the Court to address a case or certain claims in the case.  A case or claim is to be

dismissed for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) when

the district court lacks the statutory or constitutional power to adjudicate it.  *Makarova v.*

*United States*, 201 F. 3d 110, 113 (2d Cir. 2000).

### b.  Fed. R. Civ. P. 12(b)(6)

On a Rule 12(b)(6) motion, the Court must accept "all factual allegations in the

complaint as true, and draw[] all reasonable inferences in the plaintiff's favor." *Holmes v.*

*Grubman*, 568 F.3d 329, 335 (2d Cir. 2009) (internal quotation marks omitted).  This tenet

does not apply to legal conclusions. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Similarly,

"[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory

statements ... are not entitled to the assumption of truth." *Id.; see also Bell Atl. Corp. v.*

*Twombly*, 550 U.S. 544, 555 (2007)(stating that a court is "not bound to accept as true a

legal conclusion couched as a factual allegation").

"To survive a motion to dismiss, a complaint must contain sufficient factual matter,

accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at

678 (quoting *Twombly*, 550 U.S. at  570).  A claim will only have "facial plausibility when the

plaintiff pleads factual content that allows the court to draw the reasonable inference that

2

the defendant is liable for the misconduct alleged." *Id.* "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.''" *Id.* (quoting *Twombly*, 550 U.S. at 557).

"Generally, '[i]n adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken.'" *Ayala-Rosario v. Westchester Cty.*, No. 19-CV-3052 (KMK), 2020 WL 3618190, at *3 (S.D.N.Y. July 2, 2020)(quoting *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (internal quotation marks omitted)). "However, when the complaint is pro se, the Court may consider 'materials outside the complaint to the extent that they are consistent with the allegations in the complaint.'" *Id.* (quoting *Alsaifullah v. Furco*, No. 12-CV-2907, 2013 WL 3972514, at *4 n.3 (S.D.N.Y. Aug. 2, 2013) (internal quotation marks omitted)). This includes "'documents that a pro se litigant attaches to his opposition papers,'" *id.* (quoting *Agu v. Rhea*, No. 09–CV–4732, 2010 WL 5186839, at *4 n. 6 (E.D.N.Y.2010), and "'allegations contained in plaintiff's memorandum of law, at least where those allegations are consistent with the allegations in the complaint[].'" *Lopez v. Cipolini*, 136 F. Supp. 3d 570, 579 (S.D.N.Y. 2015)(quoting *Donahue v. U.S. Dep't of Justice*, 751 F. Supp. 45, 49 (S.D.N.Y.1990)). Such a procedure is consistent with the requirement that pro se pleadings must be liberally construed and interpreted to raise the strongest argument that they suggest. *See Vivar v. City of New York*, No. 18-CV-5987 (VSB), 2020 WL 1505654, at *5 (S.D.N.Y. Mar. 30, 2020).

**c. Fed. R. Civ. P. 12(c)**

3

In deciding a Rule 12(c) motion, the Court employs the same standards as those applicable to a Rule 12(b)(6) motion. *Altman v. J.C. Christensen & Assocs., Inc.*, 786 F.3d 191, 193 (2d Cir. 2015).

## III.   BACKGROUND

On August 8, 2016, Parole Officer Saben ("P.O. Saben") went to Mario Leslie's residence at 514 Marcellus Street in Syracuse, New York, to conduct a standard parole home visit. Am. Compl, dkt. 3, at 5; *see also id.* at 27.  Mr. Leslie is Plaintiff's son and was a New York State parolee at the time.  *Id.* at 7, 27.  Present at the location were Mr. Leslie and Tamacha Rodriguez, Mr. Leslie's girlfriend who also resided there.  Once in the residence, P.O. Saben spotted 30 blue glassine envelopes "known to contain heroine" folded and rubber-banded together on the stereo speaker. *Id.*, at 5, 27.   P.O. Saben informed Mr. Leslie that he was going to search his residence per the conditions of Mr. Leslie's parole release. *Id.*  During the search, which P.O. Saben conducted with the assistance of other parole officers, P.O. Saben discovered a safe containing a loaded firearm and $31,925 in United States currency. *Id.*  P.O. Saben also discovered a key ring which contained a set of keys identified as keys to Plaintiff 's residence at 112 Fordham Road, Apartment #1B in the City of Syracuse.  *Id.*  "At this point Sr. P.O. Rigby called the Syracuse Police Department."[1] *Id.* at 6.  P.O. Rigby spoke to Sergeant A. Llukaci, a

---

[1]P.O. Rigby was dismissed from the action because, based on Plaintiff 's allegations, it did not appear that he was involved in obtaining the search warrant for Plaintiff 's apartment or present during the search.  *See* Dkt. 7, 8. He was dismissed without prejudice to repleading, but Plaintiff  has not amended her pleading.  The Syracuse Police Department was dismissed from the action because administrative arms of a municipality do not have a legal identity separate from the municipality, and may not sue or be sued. Dkt. 7, 8 (*see Hayes v. County of Sullivan*, Nos. 07-CV-667; 09-CV-2071, 2012 WL 1129373, at *24 (S.D.N.Y. March 30, 2012) (citing inter alia *Hall v. City of White Plains*, 185 F. Supp. 2d 293, 303 (S.D.N.Y. 2002)).  Although Plaintiff  was afforded the ability to amend to bring a *Monell* claim against the City of Syracuse, she has not

(continued...)

4

detective with the Syracuse Police Department, and Sergeant Llukaci told defendants

Detectives William Summers and D.P. Proud to go to the Marcellus Street address. *Id.* at 6,

27.

According to Detective Summers's police report, which is attached to the Amended

Complaint, he met with P.O. Saben who explained what had occurred and that he had

discovered a gun, drug paraphernalia and U.S. currency at Mr. Leslie's residence.  *Id.* at 27.

Following Detective Summers's recitation of the facts learned from P.O. Saben, the report

indicates in a parenthetical that "an affidavit from Saben was obtained in regards to his

involvement." *Id.*  Based on the information provided by P.O. Saben and after viewing the

items obtained by P.O. Saben, Detective Summers returned to his office to type a search

warrant application for 514 Marcellus Street, a black 2002 Honda Civic located in the

driveway, and the persons of Mr. Leslie and Ms. Rodriguez. *Id.*

Detective Summers's report also indicates:

> I was then notified by Det. Sgt. Proud that Rodriguez made a statement while
> he was at the residence that Leslie keeps his money at his mother's house
> (112 Fordham Road, apartment #1B) and Leslie's set of keys to her residence.
> Det. Sgt. Proud also advised me that he was informed by P.O. Saben that
> Leslie was paroled to 112 Fordham Rd, apt. #1B for about a week when Leslie
> changed his residence to 514 Marcellus Street and has been living there for
> approximately three weeks.
>
> At this time I added 112 Fordham Rd. #1B to the search warrant and
> petitioned the Honorable Judge Kate Rosenthal for search warrants for the
> above listed.  The Honorable Judge Kate Rosenthal issued search warrants
> for 514 Marcellus Street, 112 Fordham Road  #1B and the person of Mario E.
> Leslie and Tamacha Rodriguez.

*Id.*

---

[1](...continued)
done so.

The search warrant for 112 Fordham Road, Apt. #1B, indicates that the basis for finding probable cause to search was an affidavit submitted by Detective Summers. *Id.* at 16.  Detective Summer's affidavit is not attached to the Amended Complaint.  Plaintiff asserts she was "not afforded any documentation (showing cause or legal standing to seize her property) in the form of an affidavit from the Detective William Summers . . . and Parole Officers Mark Saben and Sr. PO Rigby also involved with this case, as it relates to Plaintiff's residence at 112 Fordham Road and 514 Marcellus Street." *Id.* at 13.  She also asserts that the warrant was sought "under the direction of the New York Division of Parole."[2]  *Id.* at 7.

The warrant for 112 Fordham Rd., Apt. #1B, allowed the police to search Plaintiff's residence, including any safe therein, "for evidence in the crime of Criminal Possession of a Controlled Substance, Criminal Sales of a Controlled Substance in violation of Section 220.00, Criminal Possession of a Weapon, in violation of Section 265.00, and any other narcotics/drug related offenses of the New York State Penal Law." *Id.*, at 16-17.  The warrant authorized the seizure of any such property if found at the location.  *Id.*

Detective Summers's police report indicates that "[o]nce the warrant was signed, other members of the Special Investigations Division arrived at 514 Marcellus Street and 112 Fordham Road #1B and executed the search warrant." *Id.* at 27.  Plaintiff  contends in the Amended Complaint that she was "present at the time Syracuse Police and Parole Officer Mark Saben arrived at her residence and was denied entrance even though there was no warrant available at that time." *Id.* at 6.  Plaintiff  asserts that "the police . . .  entered her residence with the assistance of P.O. Mark Saben, who possessed Plaintiff's door key

---

[2]The New York Division of Parole was dismissed from this action on the basis of Eleventh Amendment immunity.  *See* Dkt. 7, 8.

taken from her son Mario prior to their actual possession of the warrant for 112 Fordham

Rd." *Id.*  In another part of the Amended Complaint Plaintiff asserts that she worked from

home and went on a break "and upon Plaintiff's return she was refused entry to her

residence and lost approximately five hrs. of income." *Id.* at 14.  Plaintiff attaches to the

Amended Complaint her Civilian Complaint Report that she filed after the money was

seized from her apartment. *Id.* at 18.  In this report, she states:

> On August 9, 2016, I returned home from a short leave.  Upon return, I
> entered the building at 112 Fordham Rd. and there were 2 officers standing in
> front of the entrance of my apartment.  They told me that I could not enter.
> They did not present anything as to why I could not enter.  I work from home
> and they would not let me in my apartment.  I did advise them that they were
> interfering [with] my work.  I was not given a decision as to why I could not
> enter a place where I paid rent and live and this process went on for a couple
> of hours, as officer entered the apartment building. . . .  The [Syracuse Police
> Department] entered my apartment with personal keys and also my safe.
> They trashed both rooms by emptying every closet/shoe box, drawer.  They
> poured the bathroom trash can in my bath tub and added the towel and
> washcloth.  They stole my money out of my safe [and] did not inform me of
> what they took.  They did not give me a receipt . . . .

*Id.*

> In her opposition to P.O. Saben's motion, Plaintiff asserts:

> As I mentioned in previous paperwork, Saben arrived at 112 Fordham Rd. and
> I was home.  I was standing outside of the apartment for several hours while
> awaiting a warrant.  Saben retrieved keys from 514 Marcellus to allow the
> officers to access my apartment.  He continued into the apartment, as I
> followed.  I asked him why did he send them to my house and he did not
> answer.  He stood in a corner near my apartment door, with his back turned to
> me, as he took a key off of the key ring, to hand to the officers.  The warrant
> still had not arrived.

Dkt. 33, at 1.

Plaintiff claims that the Syracuse Police Department officers "entered [her] apartment

with personal keys and also [her] safe ... and stole [her] money." Dkt. 3 at 18 (Civilian

Complaint).  Plaintiff contends that the Syracuse Police officers discovered $40,000 in United States currency in a safe in her bedroom, which they seized and was held in connection with Mr. Leslie's state court criminal action. *Id.* at 10; *see also id.* at p. 23 (Plaintiff's Application for Release of Property, stating "$40,000 was taken from my home ... [cash]").  Plaintiff states that the money taken from her home "[was not] specifically mentioned in any of the paperwork" that was subsequently provided to her as the result of her inquiries. *Id.* at 12 .  Plaintiff also claims that the individuals who seized her money did not have the "warrant in hand" and never gave her a receipt for the money they took. *Id.* at 11.  Plaintiff states in her opposition to P.O. Saben's motion that "Saben did not take my money, but he is the reason as to why the money was seized.*"* Dkt. 33, at 1.

Plaintiff maintains that the warrant for the search of her apartment "was faulty and too broad to be a legitimate search when the living space of the Plaintiff was searched without legal cause." Dkt. 3 at 7.  Plaintiff contends that "[u]pon further investigation it would've been established that Plaintiff had legal possession of the 40K." *Id.* at 8.  Plaintiff states that there is no connection between her and Mr. Leslie's "illegal activities," and there was nothing "illegal" found in her apartment. *Id.* at 13.  Plaintiff asserts in the Amended Complaint: "Upon his arrival [at Mr. Leslie's residence], Sgt. D. P. Proud stated that he spoke with Tamacha R. and that she allegedly told him Mario Leslie told her that he keeps money at his mother's apartment - although there is no affidavit on file to attest to that assertion by the Det. Proud." *Id.* at 6.  She also asserts that "[a]bsent proof of [Ms. Rodriguez] even making the statement that Mario Leslie had money at his mother's apartment, further calls into question one or more of what, if any, legal grounds or

jurisdiction that the Syracuse Police Department had to even initiate a warrant (request) and or conduct a subsequent search of Plaintiff's residence at 112 Fordham Rd.  There wasn't any corroborating evidence or probable cause that would substantiate a warrant to enter 112 Fordham Rd. Plaintiff's private residence." *Id.* at 6.

Attached to Plaintiff 's opposition to P.O. Saben's motion is a hand-written letter dated February 4, 2020 from Ms. Rodriguez.  In the letter, Ms. Rodriguez states that when P.O. Saben asked her whether Mr. Leslie "had anything at his mother's" she stated "no." Dkt. 33, at 7.  She also states that "Parole was upset they [didn't] find a large amount of drugs at my house and assumed [Mr. Leslie] must have it at his mom's if he has keys there, in which they were wrong.  No one ever told them to go to 112 Fordham Rd., no one ever stated anything was in Laytonia Flagg[']s house.  They were being sneaky and illegally doing things they had no right to." *Id.*

Officers from the Syracuse Police Department arrested Mr. Leslie on August 9, 2016 for Criminal Possession of a Controlled Substance in the Third Degree and related charges. *See* Dkt. 3 at 28, 30; *see also id* at 25-26 (Waiver and Stipulation signed by Mr. Leslie). Plaintiff claims that after her money was seized, she informed Onondaga County Assistant District Attorney ("ADA") Sean Chase that $40,000.00 of the money being held in her son's case did not belong to Mr. Leslie, and that this money was Plaintiff's savings which she would be using to purchase a new home.  *Id.* at 9.[3]  Plaintiff asserts that she produced tax returns for the previous "5 consecutive years to attest to the fact that she legally possessed the money."  *Id.*  Plaintiff claims that ADA Chase told her that his "office would return the

---

[3]Claims against ADA Chase have been dismissed on the basis of absolute prosecutorial immunity. *See* Dkt. 7,8.

illegally seized money." *Id.*  Plaintiff also claims that ADA Chase told her on three separate occasions that her money was going to be returned, but that this was a "stalling tactic" by the District Attorney's Office.  *Id.* at 10.  ADA Chase apparently told Plaintiff that he was waiting to hear from Mr. Leslie's attorney "in hopes of persuading [Mr. Leslie] to sign a forfeiture document" but that it "later became clear to the Plaintiff that the forfeiture included" the money seized at Plaintiff's residence.  *Id.*

Plaintiff states that she also spoke to then-Chief of the Syracuse Police Department, Frank Fowler,[4] who told Plaintiff that her concerns would be "thoroughly investigated," but then did not provide Plaintiff a report of the investigation and told Plaintiff to file a Freedom of Information request if she wished to see the report. *Id.* at 12.[5]  Plaintiff's efforts to retrieve her money from Chief Fowler were unsuccessful.

Plaintiff also states that she filed a complaint about the police "conduct in Plaintiff's home," and a property release request for the "immediate return of the Plaintiff's money." *Id.* at 9, *see id.* at 18 (Civilian Complaint), 23 (Application for Release of Property).  Plaintiff states that the District Attorney's Office responded to the property release request only after Plaintiff  obtained the intervention of "a 3rd party (Feldman, Kramer & Monaco, P.C.)." *Id.*[6] Plaintiff claims that the response to the property release request showed that her "legally possessed currency was improperly forfeited along with the monies ($31,925.00) seized at

---

[4]Chief Fowler is not named as a defendant in this action.

[5]Plaintiff has attached correspondence that she received from former Chief Fowler, stating that request to have her money returned had been forwarded to him and that Plaintiff could "be assured that [Fowler would] take the proper administrative action in this case." Dkt. No. 3 at 19.

[6]Claims against the Onondaga County District Attorney, William J. Fitzpatrick, have been dismissed for lack of personal involvement and because of absolute prosecutorial immunity. Dkt. 7, 8.

514 Marcellus St." *Id.* at 10, *see id.* at 24.

In his criminal action, Mr. Leslie signed a "Waiver and Stipulation" indicating that he agreed to forfeit $67,269.00 that was seized when he was arrested by the Syracuse Police Department on April 8, 2016 and charged with Criminal Possession of a Controlled Substance in the Third Degree and related charges. *Id.* at 25-26.[7]  He asserts in the Waiver and Stipulation that he is not aware of any person who is or claims to be the owner of this money. *Id.*  He indicates that he had "concluded that the District Attorney would likely establish that the above-mentioned property is subject to forfeiture pursuant to Article 13-A [of the N.Y. Civil Practice Law and Rules] and the District Attorney would likely prevail in such a forfeiture action." *Id.*   Plaintiff asserts that $40,000.00 of the total in the Waiver and Stipulation was not Mr. Leslie's to forfeit. *Id.* at 10.  She further asserts that Mr. Leslie's statements in the Waiver and Stipulation are "entirely false," and that the "[t]otal seizure was $71,925.00 taken from both 514 Marcellus Street and 112 Fordham Rd." *Id.*  Plaintiff does not, however, make any claim for the additional $4,656.00 purportedly seized. *See generally*, Dkt. No. 3.[8]

As Magistrate Judge Baxter pointed out, the "Second Cause of Action" essentially repeats the same facts that support the contention that Plaintiff's Fourth Amendment rights

---

[7]Plaintiff claims that this document was obtained after she asked for the return of the money several times from the District Attorney's Office, the Citizen Review Board, and the Syracuse Police Department. Dkt. 3  at 11.  She contends that when she failed to get a "truthful" response, she contacted Feldman, Kramer & Monaco, P.C. *Id*.  The document was sent to the attorneys' office after the firm wrote a letter of inquiry. *Id.* Plaintiff also contends that Mr. Leslie signed the Waiver and Stipulation under "duress," but the Court previously found that Plaintiff  could not assert any claims regarding her son, and in any event, her son was, by her own statement, represented by counsel when he signed the Waiver and Stipulation. Dkt. 7, 8.

[8]It appears that the additional $4,656.00 was seized from Mr. Leslie's residence. *See* Dkt. No. 3 at 28.

11

were violated by the defendants' actions in conjunction with the search of her home and the

seizure of her money.  Dkt. 3 at 12-13.  The Court adopted Magistrate Judge Baxter's

conclusion that, when applying a very liberal reading of the Amended Complaint, the

second cause of action could be interpreted as a Fourteenth Amendment due process

claim, asserting that the defendants deprived Plaintiff of her money without due process of

law when they did not return the money after she made various inquiries and did not allow

her to challenge the ownership of the money after her son signed the Waiver and

Stipulation.

Plaintiff seeks the return of the $40,000.00 that she claims was seized by police

when they executed the search warrant at her apartment, compensatory damages for the

"Syracuse Police Department trashing Plaintiff 's two bedrooms at 112 Fordham Rd.,"

damages for "five hours" worth of lost income on the day of the search, unspecified lost

income for the day that she had to appear in court,[9] and "punitive" damages for emotional

pain and suffering, including the damages for the delay in purchasing her dream home. *Id.*

at 14.

## IV.    DISCUSSION

### a.  Officer Curran

Officer Curran moves to dismiss all claims against him on the grounds that the

Amended Complaint fails to contain allegations plausibly indicating his personal

involvement in any action that might have caused injury or damage to Plaintiff.

---

[9]Apparently, on the day that the officers searched Plaintiff 's apartment, they found a "weed roach" and gave Plaintiff  an appearance ticket, which was later dismissed after Plaintiff  appeared in court. Dkt. 3 at 14. Plaintiff  seeks lost income for the time that it took to appear in court. *Id.*

### 1.   Personal Involvement

Personal involvement of a defendant in the alleged constitutional deprivations is a

prerequisite to an award of damages under Section 1983.  *Excell v. Woods*, No.

07-CV-0305, 2009 WL 3124424, at *20 (N.D.N.Y. Sept. 29, 2009) (Suddaby, J.) (quoting

*Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994)); *see Singletary v. Russo*, 377 F. Supp. 3d

175, 185 (E.D.N.Y. 2019)("A fundamental inquiry in a [Section] 1983 case, and as to each

defendant, is whether that defendant was personally involved in the alleged constitutional

violation.").  In order to state a cause of action under Section 1983 against an individual, a

Plaintiff must plausibly allege some tangible connection between the alleged unlawful

conduct and the named defendant. *See  Excell,* 2009 WL 3124424, at *20.

### 2.   Fourth Amendment

The Fourth Amendment protects "[t]he right of the people to be secure in their

persons, houses, papers, and effects, against unreasonable searches and seizures." U.S.

Const., amend. IV  "[W]hen it comes to the Fourth Amendment, the home is first among

equals.  At the Amendment's very core stands the right of a man to retreat into his own

home and there be free from unreasonable governmental intrusion." *Florida v. Jardines*,

569 U.S. 1, 6 (2013) (citation and quotation marks omitted)).   "A 'search' occurs for

purposes of the Fourth Amendment if the police seek information by intruding on a person's

reasonable expectation of privacy or by means of trespassing upon one's person, house,

papers, or effects." *United States v. Smith*, 967 F.3d 198, 205 (2d Cir. 2020)(citing *Jardines*,

569 U.S.  at 5; *United States v. Jones*, 565 U.S. 400, 408 n.5  (2012); *El-Nahal v. Yassky*,

835 F.3d 248, 253–54 (2d Cir. 2016)).   "A 'seizure' of personal property occurs for

purposes of the Fourth Amendment if the police meaningfully interfere with an individual's possessory interests in that property." *Id.* (citing *United States v. Jacobsen*, 466 U.S. 109, 113 (1984); *United States v. Iverson*, 897 F.3d 450, 458 (2d Cir. 2018)).   Of course, police officers are authorized to enter a residence and seize specific items of property if they receive a search warrant issued by a neutral magistrate based upon probable cause to believe that evidence of a specific crime might be found in the residence.

"It is well-settled that in cases raising claims under the Fourth Amendment of unauthorized execution of a search warrant '[t]he validity of the warrant must be assessed on the basis of the information that the officers disclosed, or had a duty to disclose, to the issuing Magistrate.'" *Arroyo v. City of Buffalo*, No. 15-CV-753, 2018 WL 4376798, at *3 (W.D.N.Y. Sept. 13, 2018) (quoting *Velardi v. Walsh*, 40 F.3d 569, 575 n. 2 (2d Cir. 1994) (internal quotation marks omitted)).

> Normally, the issuance of a warrant by a neutral magistrate, which depends on a finding of probable cause, creates a presumption that it was objectively reasonable for the officers to believe that there was probable cause, *see United States v. Ventresca*, 380 U.S. 102, 109, 85 S. Ct. 741, 746, 13 L. Ed.2d 684 (1965), and a plaintiff who argues that a warrant was issued on less than probable cause faces a heavy burden, *see, e.g., Rivera v. United States*, 928 F.2d 592, 602 (2d Cir.1991) (search warrant). In order to mount such a challenge, the plaintiff must make a "substantial preliminary showing" that the affiant knowingly and intentionally, or with reckless disregard for the truth, made a false statement in his affidavit and that the allegedly false statement was "necessary to the finding of probable cause." *Franks v. Delaware*, 438 U.S. 154, 155–56, 98 S. Ct. 2674, 2676, 57 L. Ed.2d 667 (1978); *see* [*Magnotti v. Kuntz*, 918 F.2d 364, 368 (2d Cir.1990)] (*Franks* standard, established with respect to suppression hearings in criminal proceedings, also defines scope of qualified immunity in civil rights actions).

*Golino v. City of New Haven*, 950 F.2d 864, 870–71 (2d Cir. 1991).  Further, a warrant is not invalid for Section 1983 purposes if it is "'based on seemingly reliable information which is

14

later found to be erroneous.'" *Arroyo*, 2018 WL 4376798, at *3 (quoting *Lewis v. City of Mt. Vernon, N.Y.*, 984 F. Supp. 748, 756 (S.D.N.Y. 1997)).

### 3. Fourteenth Amendment

The Due Process Clause of the Fourteenth Amendment protects procedural and substantive rights. *Page v. Cuomo*, No. 1:20-CV-732, 2020 WL 4589329, at *12 (N.D.N.Y. Aug. 11, 2020).  ""Procedural due process requires that 'a deprivation of life, liberty, or property be preceded by notice and opportunity for hearing appropriate to the nature of the case.'" *Id*. (quoting *Ceja v. Vacca*, 503 F. App'x 20, 22 (2d Cir. 2012) (summary order), in turn quoting *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985)).  "Under the Fourteenth Amendment, '[a] procedural due process claim is composed of two elements: (1) the existence of a property or liberty interest that was deprived and (2) deprivation of that interest without due process.'" *Arroyo v. Dep't of Educ. of City of New York*, No. 19 CIV. 7416 (ER), 2020 WL 4570380, at *9 (S.D.N.Y. Aug. 6, 2020)(quoting *Bryant v. N.Y. State Educ. Dep't*, 692 F.3d 202, 218 (2d Cir. 2012)).  "Substantive due process protects against government action that is arbitrary, conscience shocking, or oppressive in a constitutional sense, but not against a government action that is incorrect or ill-advised." *Kisembo v. N.Y. State Office of Children & Family Servs.*, 285 F. Supp. 3d 509, 521 (N.D.N.Y. 2018) (citation omitted).

### 4. Analysis

### A. Fourth Amendment Claim

Officer Curran is listed among the parties to Plaintiff's suit, *see* Dkt. No. 3 at 2, but the Amended Complaint itself does not contain any factual allegations with respect to him.

*Id.* at 5-14.  Rather, Officer Curran's name appears only in an attachment to the Amended Complaint, that is, as the author of a police report connected to the investigation at Mr. Leslie's apartment. *Id.* at 29.  According to that police report, Officer Curran responded to 514 Marcellus Street "to assist with the execution of a drug search warrant by detectives assigned to the Syracuse Police Departments Special Investigations Division."  *Id.*  Officer Curran purportedly asked Ms. Rodriguez "several times" about where the U.S. currency found at that location came from. *Id.*  She apparently provided "conflicting accounts," first telling Curran that she had received a settlement from the U.S. government from a Social Security Insurance claim on behalf of her son, and then that $5000 of the money was from her tax returns with the remainder belonging to Mr. Leslie. *Id.*  However, the report reflects that Officer Curran left the residence at some point to investigate the circumstances surrounding a 2009 Buick Enclave that Ms. Rodriguez said she had recently dropped off at an automobile dealership in the area. *Id.*  There is no indication from this report, or from the allegations in the Amended Complaint, that Officer Curran provided any information to other officers indicating that Ms. Rodriguez said that Mr. Leslie kept money at his mother's residence, that he participated in the execution of the search warrant at Plaintiff's residence, or that he had anything to do with the seizure of $40,000 from Plaintiff's apartment.

Even assuming that the search warrant for Plaintiff's residence lacked probable cause or was based upon false information indicating that Ms. Rodriguez stated that Mr. Leslie kept money at his mother's apartment, Plaintiff has failed to allege facts plausibly indicating that Officer Curran had any involvement in obtaining the search warrant, providing information for the search warrant application, participating in the search of Plaintiff 's

apartment, or seizing $40,000 from that location.  Thus, Plaintiff fails to present allegations amounting to a plausible Fourth Amendment claim against Officer Curran and any such claim must be dismissed.  Because it is possible that Plaintiff could present allegations plausibly tying Officer Curran to a Fourth Amendment violation, dismissal is without prejudice to repleading.

### B.  Due Process Claim

Plaintiff provides insufficient allegations indicating that Officer Curran had any personal involvement in the possession of the $40,000 after its seizure, the decisions that denied Plaintiff's requests to return to her $40,000, or the Onondaga County District Attorney's decision to seek civil forfeiture of the money by way of Mr. Leslie's Waiver and Stipulation.  Under these circumstances, Plaintiff fails to allege facts plausibly demonstrating Officer Curran's personal involvement in any §1983 due process violation. Furthermore, while Plaintiff could have sought return of the $40,000 in state court prior to Mr. Leslie's entry of the Waiver and Stipulation under N.Y. Civil Practice Law and Rules ("CPLR") § 1327, *seeTupi Cambios S.A. v. Morgenthau*, 2008 NY Slip Op 1398, ¶¶ 1-2, 48 A.D.3d 278, 279, 851 N.Y.S.2d 180, 181 (N.Y. App. Div. 2008),[10] or within one year of entry

---

[10]In *Tupi Cambios S.A.,* the New York State Appellate Division, First Department, held:

CPLR 1327 provides, in part, that: "Prior to the application of property or debt to the satisfaction of a judgment, any person . . . who has an interest in the property . . . may commence a special proceeding against the claiming authority to determine the rights of adverse claimants to the property." Thus, under the plain and unambiguous language of the statute, to assert a timely claim under CPLR 1327, the petitioner must commence a special proceeding *before* the subject property is forfeited and applied to satisfy a judgment. That the "application of property" here occurred subject to a stipulation rather than a judgment is of no consequence, since the stipulation, by its terms, terminated the forfeiture proceeding. For the purposes of applying this statute, the stipulation was the equivalent of a judgment (cf. *Prudential Lines v Firemen's Ins. Co. of Newark, N.J.*, 91 AD2d 1, 3, 457 NYS2d 272 [1982] ["A consent judgment is a conclusive adjudication and has the same force and effect as a

(continued...)

of judgment of forfeiture under CPLR § 1311(7),[11] the proper respondent in such actions is

the District Attorney. *See Tupi Cambios S.A.*, 48 A.D.3d 278.  Accordingly, any claim against

Officer Curran based on the failure to return Plaintiff's $40,000 in Plaintiff's son's state

criminal action or in the state court civil forfeiture action is dismissed with prejudice.

### b.  P.O. Saben

P.O. Saben moves to dismiss all claims against him on the grounds that Plaintiff has

failed to allege facts supporting his personal involvement in the constitutional violations

alleged in the Amended Complaint.

### 1.  Analysis

### A.  Fourth Amendment Claim

Plaintiff's allegations of P.O. Saben's personal involvement in the application for the

search warrant and the execution of the warrant at Plaintiff's apartment are sparse at best.

But when liberally construing the allegations in the pleadings, interpreting them to raise the

---

[10](...continued)
judgment after trial"]).  Accordingly, petitioners' claim under CPLR 1327, which was
interposed approximately six months after the parties to the forfeiture action entered into the
stipulation, is untimely.

48 A.D.3d at 279 (emphasis in original)

[11]CPLR 1311 (7) states:

In addition to any other relief provided under this chapter, at any time within one year after
the entry of a judgment of forfeiture, any person, claiming an interest in the property subject
to forfeiture who did not receive actual notice of the forfeiture action may petition the judge
before whom the forfeiture action was held for a remission or mitigation of the forfeiture and
restoration of the property or the proceeds of any sale resulting from the forfeiture, or such
part thereof, as may be claimed by him. The court may restore said property upon such
terms and conditions as it deems reasonable and just if (i) the petitioner establishes that he
or she was without actual knowledge of the forfeiture action or any related proceeding for a
provisional remedy and did not know or should not have known that the forfeited property
was connected to a crime or fraudulently conveyed and (ii) the court determines that
restoration of the property would serve the ends of justice.

strongest argument that they suggest, and drawing all reasonable inferences in Plaintiff's favor, she states enough, although barely so, to plausibly demonstrate that P.O. Saben was personally involved in a Fourth Amendment violation surrounding the search and seizure at Plaintiff's apartment.  In reaching this conclusion, the Court focuses on Plaintiff's allegations, statements, and attachments, and not on the statements by defendants in the police reports attached to the Amended Complaint.

First, Plaintiff asserts that the application for the search warrant for her residence was made "under the direction of the New York Division of Parole."  Although a broad conclusory allegation, in the context of this case a reasonable inference could be drawn that this is an inartfully drafted allegation that P.O. Saben was personally involved in directing the search warrant application.  P.O. Saben played a central role in the discovery of indicia of drug trafficking at Mr. Leslie's residence, and based on Ms. Rodriguez's letter appeared to have a strong belief that Mr. Leslie kept drug-related items at his mother's apartment where P.O. Saben knew that Mr. Leslie had been initially paroled.  Further, as discussed below, P.O. Saben was present when the search warrant for Plaintiff's residence was executed and, when the search warrant did not arrive, provided keys so Syracuse police officers could enter and search.  Plaintiff asserts that P.O. Saben did not seize her $40,000, but contends that he is the reason that it was seized.  In this regard, Plaintiff asserts that she asked P.O. Saben why he sent the police to her residence, providing some indication that Plaintiff believes that P.O. Saben was the catalyst for the search at her residence.

Second, although Detective Summers's report indicates that he was told by Detective Proud that Ms. Rodriguez made a statement while Detective Proud was at 514 Marcellus

Street that Mr. Leslie keeps "his money at his mother's house," and although Plaintiff appears to challenge Detective Proud's statement in the Amended Complaint, it is unclear from the phraseology in Detective Summers's report ("I was then notified by Det. Sgt. Proud that Rodriguez made a statement while he was at the residence that Leslie keeps his money at his mother's house") to whom Ms. Rodriguez purportedly made this statement. While it may be that she made this statement directly to Detective Proud, Ms. Rodriguez's letter indicates that it was P.O. Saben who questioned her about this issue.  Further, the letter indicates that P.O. Saben appeared to believe that Mr. Leslie kept drug-related items at his mother's apartment because no drugs were found with the drug paraphernalia at 514 Marcellus Street, and because keys to Plaintiff's apartment were also found at 514 Marcellus Street.  Although attenuated, it is plausible that P.O. Saben questioned Ms. Rodriguez about this issue while Detective Proud was in the residence but not with Ms. Rodriguez, and then conveyed to Detective Proud Ms. Rodriguez's purported statement.

Third, if as Plaintiff asserts, the critical basis for finding probable cause to search Plaintiff's apartment was the purportedly false statement by Ms. Rodriguez that Mr. Leslie kept "his money" there, and if P.O. Saben supplied this information to Detective Proud knowing or having reasons to know that would be used in support of a search warrant application for Plaintiff's apartment, then there is a connection between P.O. Saben and the search warrant application containing a false statement, a potential Fourth Amendment violation.  This too is attenuated but the Court's role on this motion is not to resolve factual questions.  It is only to determine whether Plaintiff has stated enough to allow the case to go forward to the discovery stage.  The Court finds that Plaintiff has stated enough to allow

the case to go forward on the theory that P.O. Saben was personally involved in obtaining the search warrant based upon a false representation supporting probable cause.

Fourth, Plaintiff's allegations indicate that not only was P.O. Saben present when Syracuse police officers searched Plaintiff's apartment, but he provided the keys to allow their entry before the warrant arrived.  Plaintiff alleges that on the date of the search, she stood outside of her apartment for several hours "while awaiting a warrant," and that at some point while waiting for the warrant, P.O. Saben provided Syracuse police officers with keys to her apartment which they used to enter and begin their search.  P.O. Saben correctly points out that Detective Summers's police report indicates that the keys for 112 Fordham Rd., Apt. 1B, were recovered by Syracuse Police Officer Eiffe from the top of a stereo speaker in the living room at Mr. Leslie's residence.  Dkt. 3 at 28.  However, Plaintiff's states that P.O. Saben provided the keys to her apartment to the Syracuse police officers. On this motion, the Court must accept Plaintiff's contention as true.

Plaintiff also asserts that Syracuse police officers used the keys to enter her apartment before the search warrant arrived.   Although Detective Summers's police report indicates that police officers were dispatched to Plaintiff's residence "once the warrant was signed," the Court must accept Plaintiff's contention that she stood outside her apartment for several hours waiting for the search warrant to arrive, and that P.O. Saben provided the police officers with the keys to her apartment while they waited.  From the allegations in Plaintiff's pleadings, the chronology of when the search warrant was signed and when P.O. Saben provided the Syracuse police officers with the keys is unclear.  But based on the purported hours-long wait for the warrant, it is plausible that P.O. Sabin provided the keys

21

before the warrant was signed.  Under this scenario, he acted as an agent for the Syracuse police officer's unlawful entry. *See United States v. Hernandez*, No. 19 CR 0097(VM), 2020 WL 3257937, at *11 (S.D.N.Y. June 16, 2020)("The entry of a person's home without a warrant supported by probable cause is per se unreasonable, with only a few specific exceptions.")(citing *Payton v. New York*, 445 U.S. 573, 576 (1980); *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973)).

Further, even assuming that P.O. Saben provided the keys to the Syracuse police officers after he was advised that the warrant had been signed and was on its way,[12] it is plausible to find P.O. Saben liable for a Fourth Amendment violation under the theory that he was the source of false information that was critical to the probable cause finding for Plaintiff's apartment.  Again, the Court cannot, on this motion, resolve whether P.O. Saben was the source of purportedly false information for the warrant application or whether the purportedly false information from Ms. Rodriguez was critical to the probable cause determination for the search warrant.  Rather, these issues will be allowed to proceed to discovery and can be tested by a later motion or at trial.

For these reasons, the motion to dismiss the Fourth Amendment claims against P.O. Saben in his individual capacity is denied.  That being said, all claims against P.O. Saben in his official capacity must be dismissed with prejudice as barred by Eleventh Amendment immunity. *See Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989);  *Ennis v. New York Dep't of Parole*, No. 5:18-CV-501, 2018 WL 3869151, at *4 (N.D.N.Y. June 12, 2018)(The Eleventh Amendment bars any "claims for money damages against state

---

[12]The Court notes that there are no allegations in the Amended Complaint that support this proposition.

22

officials, including ... parole officers, sued in their official capacities....")(citing *Kentucky v. Graham*, 473 U.S. 159, 167–68 (1985)), *adopted by* 2018 WL 3862683 (Aug. 14, 2018).

## B. Due Process Claim

Like with Officer Curran, the Plaintiff provides insufficient allegations indicating that P.O. Saben had any personal involvement in the possession of the $40,000 after its seizure by the Syracuse police, the decisions that denied Plaintiff's requests to return to her $40,000, or the Onondaga County District Attorney's decision to seek civil forfeiture of the money by way of Mr. Leslie's Waiver and Stipulation.  Further, P.O. Saben would not be a proper defendant in any state-law claim seeking recovery of the money.   Accordingly, any claim against P.O. Saben based on the failure to return Plaintiff's $40,000 in Plaintiff's son's state criminal action or in the state court civil forfeiture action is dismissed with prejudice.

## C. Qualified Immunity

P.O. Saben also asserts that he is entitled to qualified immunity on any claims that the Court does not dismiss.  P.O. Saben "enjoys a qualified immunity that shields [him] from personal liability for damages under § 1983 insofar as [his] 'conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known, or it was objectively reasonable for [him] to believe that [his] actions were lawful at the time of the challenged act.'" *Corley v. Vance*, 365 F. Supp. 3d 407, 446-47 (S.D.N.Y. 2019)(quoting *Jenkins v. City of New York*, 478 F.3d 76, 87 (2d Cir. 2007) and citing *Caceres v. Port Auth. of N.Y. & N.J.*, 631 F.3d 620, 622 (2d Cir. 2011)), *aff'd sub nom. Corley v. Wittner*, 811 F. App'x 62 (2d Cir. 2020) .  "The Supreme Court has 'repeatedly . . . stressed the importance of resolving immunity questions at the earliest possible stage in

23

litigation.'" *Edrei v. Maguire*, 892 F.3d 525, 532 (2d Cir. 2018)(quoting *Hunter v. Bryant*, 502 U.S. 224, 227, 112 S. Ct. 534, 116 L. Ed. 2d 589 (1991) (*per curiam*)).  "This is because qualified immunity represents not simply a bar on liability but also an 'entitlement not to stand trial or face the burdens of litigation.'" *Id.* (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526, 105 S. Ct. 2806, 86 L. Ed. 2d 411 (1985)).

> Of course,  [by] presenting [his] immunity defense on a Rule 12(b)(6) motion instead of a motion for summary judgment[, the defendant] must accept the more stringent standard applicable to this procedural route." *McKenna v. Wright*, 386 F.3d 432, 436 (2d Cir. 2004). Briefly summarized, we accept the complaint's factual allegations as true and draw all reasonable inferences in the plaintiff['s] favor, including both those that support the claim and "those that defeat the immunity defense." *Id.* This standard represents a "formidable hurdle." *Id.* at 434.

*Id.*

The Court cannot determine, at this juncture, whether P.O. Saben is entitled to qualified immunity on the Fourth Amendment claims.  Questions of fact exist as to whether P.O. Saben knowingly facilitated police entry into Plaintiff's apartment before a search warrant was obtained, and whether he knowingly and intentionally supplied false information that was critical to the probable cause determination for the search warrant.  At the time, it was clearly established that law enforcement officers could not enter into a person's residence without a search warrant signed by a neutral magistrate, and that a Fourth Amendment violation occurs when an officer knowingly and intentionally provides false information that is necessary to a neutral magistrates finding of probable cause. *See Jardines*, 569 U.S. at 6; *Franks*, 438 U.S. at 155–56; *see also Rivera v. United States*, 928 F.2d 592, 604 (2d Cir. 1991)("Where an officer knows, or has reason to know, that he has materially misled a magistrate on the basis for a finding of probable cause, the shield of

24

qualified immunity is lost."); *Magnotti*, 918 F.2d at 368 (*Franks* standard . . . also defines scope of qualified immunity in civil rights actions).  Under these circumstances, qualified immunity to denied with leave to renew.

## VI.    CONCLUSION

For the reasons discussed above, defendant Richard Curran's motion to dismiss, dkt. 22, is **GRANTED**, and the Fourth Amendment claims against him are **DISMISSED without prejudice to repleading**, and any due process claim against him based on the failure to return Plaintiff's $40,000 in Plaintiff's son's state court criminal action or in the state court civil forfeiture action is **DISMISSED with prejudice.**

Defendant Mark Saben's motion to dismiss, dkt. 31, is **GRANTED in part and DENIED in part.**  The motion is granted in that all Fourth Amendment claims brought against him in his official capacity, and any due process claim against him for the failure to return Plaintiff's $40,000 in Plaintiff's son's state court criminal action or in the state court civil forfeiture action, are **DISMISSED with prejudice.**  The motion is denied in all other respects.

Plaintiff may file a second amended complaint within thirty days of the date of this order.  Failure to file a second amended complaint within that time will cause the Court to proceed on the remaining allegations in the Amended Complaint.

Plaintiff is advised that an amended complaint **supersedes in all respects** the prior pleading.  Any amended complaint must be a complete pleading and include all facts and claims not otherwise dismissed by the Court with prejudice.  Therefore, if plaintiff files a second amended complaint, she **must properly allege in the second amended**

**complaint all factual bases for all claims asserted therein, and the amended**

**complaint must be in compliance with Rules 8 and 10 of the Federal Rules of Civil**

**Procedure.**

**IT IS SO ORDERED.**

Dated: September 21, 2020

Thomas J. McAvoy
Senior, U.S. District Judge

26